IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY T. CARR,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>AUTHORIA, INC.,<br>PEOPLEFLUENT, INC., and<br>PEOPLEFLUENT HOLDINGS CORP.<br><br>　　　　　Defendants. | DEMAND FOR JURY TRIAL<br><br>C.A. No. 1:15-cv-13416-PBS |

## **AMENDED COMPLAINT**

Jeffrey T. Carr ("Carr") brings this action against his former employers, Authoria, Inc., PeopleFluent, Inc. and PeopleFluent Holdings Corp., for breach of contract and breach of the implied covenant of good faith and fair dealing.

### **Parties and Jurisdiction**

1.　　Carr is a citizen of the State of California.

2.　　Authoria, Inc. ("Authoria") is a Delaware Corporation having its principal offices at 300 Fifth Avenue, Waltham, Massachusetts.  Upon information and belief, from at least September 2013 through February 2015, Authoria conducted business in the Commonwealth under the name "PeopleFluent."

3.　　PeopleFluent, Inc. ("PeopleFluent") is a Delaware Corporation having its principal offices at 300 Fifth Avenue, Waltham, Massachusetts.  Upon information and belief, PeopleFluent is the corporate successor to Authoria and has assumed all of its liabilities relating to this matter.

4. PeopleFluent Holdings Corp. ("PHC") is a Delaware corporation having its principal offices at 10 New King Street, Suite 104, White Plains, New York. At all times relevant hereto, Authoria, PeopleFluent and PHC have been owned and controlled, directly or indirectly, by a private equity firm known as Bedford Funding.

5. The Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§1332(a) and 1332(c)(1). All parties are diverse: Plaintiff is a citizen of California and the defendants are deemed citizens of Delaware. The matter in controversy exceeds $75,000.

6. The Court has personal jurisdiction over the parties pursuant to M.G.L. c. 223A, § 3, because the claims asserted against Defendants arise out of their having transacted business in this Commonwealth.

7. Venue is proper in this district under 28 U.S.C. §1391 because the causes of action set forth below arose within the Commonwealth of Massachusetts.

## Facts

*The Agreements*

8. On or about September 19, 2013, Carr entered into a written employment agreement (the "Employment Agreement") with Authoria and PHC. A true and accurate copy of the Employment Agreement is attached as Exhibit A and incorporated herein by reference.

9. As set forth in the Employment Agreement, Carr agreed to serve as President and Chief Executive Officer ("CEO") of PHC in exchange for an annual base salary of $500,000.

10.     In addition to his base salary, the Employment Agreement also permitted Carr to earn up to $400,000 in annual incentive compensation.

11.     Carr's entitlement to incentive compensation was generally dependent upon PHC achieving certain "performance criteria and financial goals," which were to be established by the PHC board of directors on a periodic basis.

12.     Carr's compensation package also included an award of stock options and restricted share units.

13.     Carr's stock options were awarded pursuant to a Nonqualified Stock Option Agreement dated September 15, 2014 ("Stock Option Agreement"), a true and accurate copy of which is attached as Exhibit B and incorporated herein by reference.

14.     Carr's restricted share units were awarded by way of a Restricted Stock Unit Agreement dated September 15, 2014 ("RSU Agreement"), a true and accurate copy of which is attached as Exhibit C and incorporated herein by reference.

15.     Lastly, the Employment Agreement provided that Carr would receive a one-time "Make-Whole Payment" of $100,000 in the event that his former employer were to fail to make certain payments to Carr as a result of his decision to accept employment with PHC.

*Performance*

16.     Carr performed all of his duties under the Employment Agreement. Specifically, Carr served Authoria, PeopleFluent and PHC faithfully, diligently, and to the best of his abilities, and devoted his full time and attention to the business and affairs of the companies.

17. While Carr has performed his obligations under the Employment Agreement, Defendants have not.

18. For example, the "performance criteria and financial goals" established by the PHC board of directors were unattainable and entirely unrealistic. Upon information and belief, this was intentional, done in bad faith, and intended to prevent Carr from obtaining the incentive compensation to which he was entitled under the Employment Agreement.

19. Moreover, Carr's ability to achieve the "performance criteria and financial goals" was substantially hindered by, among other things, Bedford Funding, which routinely refused to allow Carr to exercise the authority customarily possessed by someone having the title and role of President and CEO.

20. For example, Carr was not permitted to select and hire members of his executive team, and was forced to accept individuals handpicked by Bedford Funding, many of whom were unqualified or otherwise not appropriate to fill the positions.

21. Carr was also not permitted to direct investments in badly needed product developments and updates, which were necessary to make the company's products more competitive in the marketplace. Again, Bedford Funding reserved to itself all decisions regarding these matters.

22. As a result of Bedford Funding's interference and the unattainable and unrealistic goals established by PHC's board, Carr was wrongfully deprived of incentive compensation for the second, third and fourth quarters of 2014.

23. Carr was also deprived of the "Make-Whole Payment" referenced above, which became due in November 2013 when his former employer stopped making payments to Carr as a result of his decision to accept employment with PHC. Although Carr provided

PHC with notice of this fact as required under the Employment Agreement, Carr never received the "Make-Whole Payment."

*Termination*

24. In or about March 2015, Bedford Funding decided to terminate Carr and formally appoint Charles Jones, Bedford Funding's Managing Partner, as President and CEO of PeopleFluent and PHC.

25. On April 2, 2015, Jones met with Carr in person, ostensibly to review first quarter results. Just a short time into that meeting, Jones demanded that Carr resign.

26. When Carr refused to resign, he was immediately handed a notice purporting to terminate his employment "for Cause" (the "Termination Notice") and told to leave the premises.

27. Pursuant to the Employment Agreement, Carr was entitled to receive substantial payments and benefits if his employment were terminated "Without Cause."

28. As reflected in Exhibit B and C, Carr's future rights under the Stock Option Agreement and RSU Agreements were also dependent upon whether his termination was for "Cause."

29. The Employment Agreement defines "Cause" to include, among other things, "[Carr's] failure to substantially perform [his] duties with the Company or to follow any lawful directive or instruction of the PHC Board that continues for more than thirty (30) days after a written demand for substantial performance is delivered to [Carr] by the Company."

30. The Termination Notice stated that Carr's employment was being terminated for "Cause" because Carr had "fail[ed] to substantially perform [his] duties."

31. Carr did not receive any "written demand for substantial performance" prior to receiving the Termination Notice.

32. Carr was not terminated for "Cause" within the meaning of the Employment Agreement, Stock Option Agreement or RSU Agreement.

33. The assertion that Carr "fail[ed] to substantially perform [his] duties" is false and was made in bad faith for the purpose of wrongfully depriving Carr of compensation to which he is entitled under the terms of the Employment Agreement, Stock Option Agreement and RSU Agreement.

34. The Termination Notice advised Carr that, because his employment was being terminated for cause, he would not be permitted to exercise his stock options, which were deemed forfeited pursuant to the terms of the Stock Option Agreement.

35. Had Carr been terminated "Without Cause" neither his stock options nor restricted share units would have been forfeited.

36. During his meeting with Jones on April 2, 2015, Carr made clear that he did not accept Jones' effort to characterize his termination as being "for Cause." Jones reacted angrily and attempted to threaten, intimidate and coerce Carr to prevent him from exercising his rights.

37. In particular, Jones threatened to take action so that Carr would, in Jones' words, "never work in this industry again."

## Count I
### (Breach of Contract)

38. Carr realleges and incorporates Paragraphs 1 through 37 above as if fully set forth herein.

39.     The Employment Agreement, the Stock Option Agreement and the RSU Agreement (collectively, the "Agreements") are enforceable contracts supported by consideration.

40.     Carr complied with all of his contractual duties and responsibilities under the Agreements.

41.     Authoria, PeopleFluent and PHC breached the Agreements by engaging in the conduct set forth above.

42.     As a direct and proximate result thereof, Carr suffered and continues to suffer harm.

## Count II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43.     Carr realleges and incorporates Paragraphs 1 through 42 above as if fully set forth herein.

44.     There is an implied covenant of good faith and fair dealing in the Agreements.

45.     Authoria, PeopleFluent and PHC breached the implied covenant of good faith and fair dealing by engaging in the conduct set forth above.

46.     As a direct and proximate result thereof, Carr suffered and continues to suffer harm.

## Count III
### (Declaratory Judgment)

47.     Carr realleges and incorporates Paragraphs 1 through 46 above as if fully set forth herein.

48.     There is a substantial and continuing controversy between the parties concerning Carr's rights and responsibilities under the Agreements.

49.    Carr is entitled to a declaration that his termination was "Without Cause", and that he retains all rights under the Stock Option Agreement and RSU Agreement.

**WHEREFORE**, Carr respectfully requests that this Court:

1. Enter judgment in Carr's favor on all counts;

2. Award Carr monetary damages, including for emotional distress, with interest;

3. Award Carr punitive damages;

4. Award Carr specific performance of his rights under the Stock Option Agreement and RSU Agreement;

5. Declare that Carr's termination was "Without Cause" and that he retains all rights under Stock Option Agreement and RSU Agreement;

6. Award Carr his attorneys' fees and costs; and

7. Order such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Jeffrey T. Carr hereby demands a trial by jury on all Counts that are so triable.

        */s/ Patrick J. Hannon*
        H. James Hartley (BBO # 561485)
        Patrick J. Hannon (BBO #664958)
        Shilepsky Hartley Michon Robb, LLP
        155 Seaport Boulevard, 11th Floor
        Boston, MA 02210
        (617) 723-8000
        Attorneys for Plaintiff

Dated: November 17, 2015

## CERTIFICATE OF SERVICE

   I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by regular mail on November 17, 2015.

                  */s/ Patrick J. Hannon*
                  Patrick J. Hannon

4835-4243-8187, v. 1